ROBERT A. FOX, Plaintiff and Respondent, *v.* ALLISTAIR MACKENZIE, Defendant and Appellant.

**1. Effect of Undertaking Given to Procure Discharge of Attachment.**

> The giving of an undertaking under §§ 5009, 5010, Comp. Laws, Dak., to procure a discharge of an attachment, does not merely release the levy but destroys the writ itself, and thereafter, a motion to dissolve the attachment as being irregularly or improvidently issued will not be entertained.

(Opinion Filed November 29, 1890.)

*A*PPEAL from district court, Ramsey county; Hon. CHARLES F. TEMPLETON, Judge.

*James F. O'Brien* and *W. H. Standish,* ( *O. F. Woodruff,* of counsel,) for appellant, *Messrs. Cochrane and Fleetham,* for respondent.

The case was elaborately briefed on both sides, but as the opinion cites most of the cases they are not noted here.

CORLISS, C. J. The defendant and appellant, having given the statutory undertaking to discharge the attachment under which his property had been seized, now insists that his right to have the attachment dissolved because improvidently issued is nevertheless unimpaired. The ground of the attachment was the non-residence of the defendant, and on the motion to dissolve it the defendant presented affidavits showing that the attachment affidavit was in that respect false. These affidavits, on the motion of the plaintiff, were stricken from the files, the court below ruling that the right of defendant to move to dissolve on the ground that the attachment had been improvidently issued was lost by his giving the undertaking to discharge the attachment under the statute. Was this error? The statute provides two distinct modes of securing the discharge of an attachment. One is on motion, because of irregularities in the proceedings, or on account of the falsity of the attachment affidavit; the other is by the giving to the plaintiff of an undertaking to pay the judgment. §§ 5009-5011, Comp. Laws.

It is clear that a successful motion to discharge an attachment, culminating in an order to that effect, is the utter annihilation of the proceeding. Everything from the seizure back to and including the false affidavit is swept aside. The language of the statute is that the defendant may move to "discharge the attachment." The same language is employed in the section providing for the giving of an undertaking by the defendant. Such an undertaking operates to "discharge the attachment." The same language is employed in the section providing for the giving of an undertaking by the defendant. Such an undertaking operates to discharge the attachment." These words must have the same construction when used to describe the effect of the giving of such undertaking as when employed in the section relating to motions to dissolve, unless we can see good reason for giving them different interpretations in the different sections. If the only effect of the giving of an undertaking by the defendant was designed to be the release of the particular property seized from the levy, if the writ nevertheless was to remain in its full vigor, why did not this section limit such effect in express terms to a discharge of the lien of

the attachment, and why did it declare that the consequence would be a discharge of the attachment itself, using the very language which, in the same statute, was employed to express the legal extinction of the writ? One of the principal reasons urged to support the doctrine that the affidavit may be traversed although the defendant has rebonded is that the other rule would result in great injustice to the defendant, who might suffer damages through delay, for which the law would afford him no redress, or which the penalty of the plaintiff's undertaking would not equal; that the law intended that he should have the speedy mode of securing possession of his property by bonding to prevent such irreparable injury; and that it would be unjust to hold that he could secure this right only at the expense of the other right to assail the truth of the attachment affidavit.

The whole force of this argument depends upon a false assumption. So far from securing his property more speedily by rebonding, the fact is that a motion to dissolve on the ground of the falsity of the affidavit may result in the defendant's securing a more speedy return of his property than he would by rebonding. The plaintiff has three days after the execution of such undertaking in which to decide whether he will except to the sufficiency of the sureties. § 5010 Comp. Laws. During this time the sheriff has the right to and usually will hold the property. The plaintiff may then except to the sureties, and the defendant can thereafter have them justify, upon not less than five days' notice. § 5010 Comp. Laws. It is, therefore, always in the power of the plaintiff to prevent the defendant from securing a return of the attached property in less than eight days from the execution of the undertaking. But the defendant may, in a proper case, in a case where he will suffer irreparable damage from the delay, in any case of great hardship, apply to the court to shorten the time in which to move to vacate the writ, and the court will, in the exercise of its discretion, shorten, by an order to show cause, the time in which to make such motion, forcing the plaintiff to sustain his attachment in much less than eight days; and, if it be said that it may require time for the defendant to prepare his papers for such a motion, it is no less true that it may and often will take time for him to secure sureties

to sign his discharge undertaking. It is thus apparent that the defendant gains nothing in the point of time by rebonding; nor is there anything in the contention that to bar his right to traverse the attachment affidavit because he has rebonded is unjust, even on the assumption that he can more quickly secure his property by giving a discharge bond than by motion. Counsel for appellant has taken it for granted that in this jurisdiction the defendant has only these two modes of saving or regaining his property from the grasp of the attachment. They have overlooked or misconstrued § 4997, Comp. Laws, which provides that the warrant of attachment shall require the sheriff to seize and safely keep defendant's property "unless the defendant give him security by the undertaking of at least two sufficient sureties in an amount sufficient to satisfy such demand, besides costs, or in an amount equal to the value of the property which has been, or is about to be, attached, in which case to take such undertaking." It was urged on the argument of this cause by counsel for the appellant, who made an oral argument, that the bond provided for in this section is the same as the bond specified in § 5010, and that if the execution of one will bar the motion to discharge the attachment so will the execution of the other. To this view we cannot assent. The bond referred to in § 4997, as we construe it, is a mere substitute for the levy made or about to be made. That bond we will designate as the "substitute bond;" the other as the "discharge bond," in the course of this opinion. The latter runs to the plaintiff in the writ, while the former is given to the sheriff. The discharge bond is in double the amount of the claim, or of the appraised value of the property seized, while the penalty of the substitute bond is only commensurate with the amount of the claim, or of the appraised value of the property attached. The substitute bond can be given before seizure to prevent it, or immediately after a levy, without an appearance in the action. The discharge bond can only be executed after seizure, and after the defendant has appeared in the action. It is presented to the court or the clerk, and the sureties thereon must justify if the plaintiff so demands. The other bond is delivered to the sheriff, and no justification of sureties is required. The condition of the discharge bond is

that the amount of the judgment recovered by plaintiff shall be paid. The statute does not provide in express terms what the condition of the substitute bond shall be. It is expressly provided that the giving of the discharge bond shall "discharge the attachment." No such provision is found in connection with the substitute bond. If the plaintiff omit to except to the sureties in the discharge bond, he cannot after judgment look to the sheriff, as the law has given him the bond in lieu of the attachment and levy thereunder. Would it be claimed that the sheriff would be likewise exonerated in all cases on taking the substitute bond to which plaintiff has no power to object? These two bonds are essentially different. The one destroys the attachment, the other at most only the levy.

It is apparent from these considerations that the argument of hardship has no force in this jurisdiction, on the view of the question most favorable to the appellant. The defendant may always release his property, or prevent its being seized, without waiving his right to assail the truth of the attachment affidavit, or even without subjecting his person to the jurisdiction of the court, where he has not been personally served with process. The substitute bond merely represents the property seized or about to be seized, and in no manner affects the writ itself. Counsel for appellant seems to concede that, under such a state of the law, the court may well hold that the execution of the discharge bond destroys the right to assail the attachment. It is on this ground that he insists that Ferguson v. Glidewell, (Ark.) 2 S. W. Rep. 713, does not overrule the prior cases, but is founded on a change in the law, giving the defendant the right to execute a forthcoming bond to obtain a return of his property, no such bond being authorized when the former decisions were made. In the case of Bates v. Killian, 17 S. C. 553, stress was laid on the clause, to be found also in § 5011, Comp. Laws, providing that in all cases the defendant might move to discharge the attachment as in case of other provisional remedies. From this it is inferred that he was to enjoy this right, not only in all cases, but also at all times and under all circumstances. It is strictly true that the defendant had the right in this case to move to discharge the attachment, but the time to exercise this right has

gone. The argument proves too much. It leads to the doctrine that a motion to dissolve for mere irregularities is not lost by rebonding, for the defendant has the right by statute to make this motion at all times as he has to make the motion to discharge because the attachment was improvidently issued, and yet no case can be found ruling that, as to irregularities, the right is not lost by rebonding. On the contrary, the decisions are in the opposite direction, and some in cases of forthcoming bonds, merely. Wolf v. Cook, 40 Fed. Rep. 438; Bank v. Mixter, 124 U. S. 728, 8 Sup. Ct. Rep. 718; Lumber Co. v. Raymond, 76 Iowa, 225, 40 N. W. Rep. 821; Payne v. Snell, 3 Mo. 409; Barry v. Foyles, 1 Pet. 314.

The earlier Arkansas cases cited (Delano v. Kennedy, 5 Ark. 457; Childress v. Fowler, 9 Ark. 159) are not authorities in support of appellant's views. When these cases were decided, the attachment proceeding was not, as it is in our own state, merely ancillary to the action. It was a component part of the action itself. The writ was attacked, not by motion, but by plea in abatement. Under such a system, the hardship of delay was real and not fictitious. Unless he should rebond, the defendant could not secure possession of his property until the issue raised by his plea in abatement could be regularly tried, and determined in his favor. In the subsequent case of Ferguson v. Glidewell, 2 S. W. Rep. 711, the same court, referring to those prior adjudications, thus state the reasons which lay at their foundation, and also the change which had been subsequently wrought: "This court held that the proceeding authorized by these statutes was in its inception a compound proceeding, combining a proceeding *in rem* with a proceeding *in personam*, each having a distinct identity, but liable to be transformed at any time before judgment into a proceeding solely *in personam*, and, as a whole, was founded upon the declaration, bond, affidavit, and writ, in harmonious combination; and that, should this foundation be defective, as it would be in case the affidavit, the bond, or the writ should not be in conformity with the statute, or either should vary, the one from the other, in so much as to disturb the harmony of the whole as one suit, the entire proceedings, if appropriately assailed, would necessarily fail. It fur-

ther held that the object of these statutes was to obtain juris-
diction of the person of the defendant; that the bond which the
defendant was authorized by these statutes to execute to secure
the release of his property was essentially an instrument of bail,
which accomplished substantially all the ends that were accom-
plished at common law by the taking of the bail-bond below,
filing, entering, and perfection of bail to the action above; that,
when a defendant in an action of attachment executed such a
bond, he did nothing more than a defendant did in England, in
an ordinary action, when he first executed a bail-bond below to
the sheriff, and subsequently appeared, as he had covenanted to
do, and entered into a recognizance of special bail to the action
above, and perfected appearance there by the justification of his
bail; that the bail-bond below to the sheriff, and the
recognizance of special bail to the action above, did not
have the effect, at common law, of cutting off any of
the defenses to the defendant; and that, therefore, the execu-
tion of the bond by the defendant for the purpose of discharg-
ing the attachment, under the statutes referred to, did not im-
pair any of the defendant's rights of defense, and that, after its
execution, he might defend the action either by plea in abate-
ment, interposed in apt time and in due form, or by a plea in
bar, in the same manner in every respect as if he had not exe-
cuted the bond, and has suffered the property attached to re-
main in the hands of the sheriff.    Childress v. Fowler, *supra*.

But the Code has made radical changes in the pleading and
practice in the courts of this state.    The bond and affidavit
made by the plaintiff to secure an attachment and the writ of
attachment no longer form a part of the original proceedings by
which an action at law may be commenced.    Under the Code,
attachment is a provisional remedy, and merely ancillary to the
action in which it is sued out.    Its object, as expressly defined
by the Code, is to secure the satisfaction of such judgment as
may be recovered by the plaintiff.    The bond the defendant is
authorized to give to dissolve the attachment no longer fills the
place of a bail-bond at common law.    It does not bind him to
appear and answer to the plaintiff's demand at such time and
place as by law he should, as it did under the former statutes.

The rules of construction heretofore used by this court in passing upon the effects of a bond by the defendant to dissolve an attachment upon his right to attack the attachment proceedings are not, therefore, applicable to a dissolution bond executed under the Code, the reason having ceased to exist." This case is directly in point, the court holding that the defendant and sureties were precluded from asserting that the attachment was improvidently issued; even though after the execution of the bond the writ had been vacated on motion. The discharge can have no effect at all if it does not affect the bond. The court held that there was in fact no attachment to discharge, saying: "Section 337 as we have seen, provides that the defendant may discharge the attachment by giving bond that he will perform the judgment of the court. How can the attachment be sustained or discharged after the defendant has discharged it by giving the bond ? "

The decision in Lehman v. Berdin, 5 Dill. 340, was simply the adoption of the prior ruling by the state by the federal court, as was indeed its duty. These rulings were sound, as was the decision in Love v. Voorheis, 13 La. Ann. 549, where the statute provided that the giving of the bond should operate not to discharge the attachment, as in this state, but merely release the property from the levy. Right here lies the fallacy of appellant's reasoning. He repeatedly asserted that the statute gives him the right to move at any time before judgment. But this provision necessarily presupposes an existing attachment to be assailed and overthrown. The right to strike down the writ by litigation certainly cannot be exercised after the suitor has voluntarily supplanted the writ as well as the levy by giving the statutory discharge bond. The right to move to discharge the attachment any time before judgment will not warrant the court in reviving the writ which the defendant by rebonding has already discharged. The authorities fully sustain our position. The cases here cited are not all directly in point, but they are all in harmony with our views, and some are express authority for our position: Dierolf v. Winterfield, 24 Wis. 143; Wolf v. Cook, 40 Fed. Rep. 438; Austin v. Burgett, 10 Iowa, 302–304; Allerton v. Eldridge, 10 N. W. Rep. 252; Hill v. Harding, 93 Ill. 80; Bunneman v.

Wagner, 16 Or. 433, 18 Pac. Rep. 842; Myers v. Smith, 29 Ohio St. 123; Paddock v. Matthews, 3 Mich. 23; Endress v. Ent, 18 Kan. 236; Bank v. Mixter, 124, U. S. 728, 8 Sup. Ct. Rep. 718; McCombs v. Allen, 82 N. Y. 117; Carpenter v. Turrell, 100 Mass. 450; Barry v. Foyles, 1 Pet. 314; Inman v. Strattan, 4 Bush, 445; Hazelrigg v. Donaldson, 2 Metc. (Ky.) 445; McAllister v. Eichengreen, 34 Md. 54. The Arkansas cases we have seen are not in point, and are opposed to the latest decisions of that court under new statutes very similar to those of our state. In Louisiana, the statute, as we have seen, provided for only a releasing of the property, and not the discharge of the attachment on the giving of a bond, and the cases from that state, are, therefore, foreign to the question involved. Two decisions from New York are cited, (Garbutt v. Hanff, 15 Abb. Pr. 189; Claflin v. Baere, 57 How. Pr. 78,) which appear to sustain appellant's view, but the court of appeals in that state in quite a recent case has ruled that the discharge bond destroyed the attachment, (McCombs v. Allen, 82 N. Y. 114.)

It is true that the precise question presented by this appeal was not before that court, but both the decision and the language of the court sustain the holding of the court below in the case at bar. Defendant, having discharged an attachment by rebonding, went into bankruptcy within four months after the time when the attachment was issued. The bankruptcy act under such circumstances destroyed the attachment. In an action on the bond, it was contended that the bond was a mere substitute for the writ, and that, the bankruptcy proceedings having annihilated the attachment, the bond also was swept away. But the court held that there was no attachment existing after defendant had rebonded upon which the bankruptcy act could exert its force, saying: "There was no attachment lien nor any attachment in force upon which such proceedings could operate, and this fact is conclusive against the defendants." The same decision was made in Carpenter v. Turrell, 100 Mass. 450, and in Hill v. Harding, 93 Ill. 80. The case in 4 Hill, 598, (in re Faulkner,) was a case of void attachment, because the affidavit on which it was founded was insufficient on its face. Bruce v. Conyers, 54 Ga. 679, belongs to the same class, as is

apparent from the syllabus: "Attachment may be dismissed for defective affidavit after replevy bond has been given. The security in the replevy bond is not bound if the property was not bound. A void attachment will neither uphold the levy nor a bond given to support the levy." There is a manifest difference between a void attachment and one which may be set aside because improvidently issued. A void attachment will not support a discharge bond, because there is nothing for the bond to rest upon. A valid attachment which may be vacated because the affidavit is false will support such a bond. We will discuss this question and the appellant's contention that the attachment was void in a subsequent portion of this opinion.

The Ohio case (Egan v. Lumsden, 2 Disn. 168) cited by appellant does not express the rule in that state. Myers v. Smith, 29 Ohio St. 123. This later and higher decision supports the respondent's view. There is, in fact, no authority to support the appellant's position under the same statute, the strongest case (Bates v. Killian, 17 S. C. 553) being a decision of a jurisdiction having no forthcoming bond, and providing no other means by which defendant could secure possession of his property except by giving the bond, the effect of which, it was claimed, was to bar defendant's right to assail the attachment affidavit. It is on the ground of the absence of the right to give such a bond that the appellant is strenuously insisting upon the hardship of the construction for which respondent contends; and the supreme court of Arkansas in Ferguson v. Glidewell, 2 S. W. Rep. 711, lays considerable stress on the fact that since the last decision in that state the right to give such a bond to secure his property has been conferred upon the defendant by statute. As we regard the statute in our own state, the bond it provides for is still more favorable to the defendant, as it enables him not merely to become the custodian of the property subject to the lien of the attachment, but to release his property from such lien absolutely. This was the construction given the same statute in California. Curiac v. Packard, 29 Cal. 194. This construction does away with the criticism of Chief Justice Cockrill, in Ferguson v. Glidewell, 2 S. W. Rep. 711-718, that the right to give a forthcoming bond was not sufficient to pro-

tect the defendant, as the property would remain subject to the attachment in his hands, and he be thereby precluded from selling it in the usual course of business. Under our statute, the substitute bond takes the place of the lien of attachment, and defendant can, by giving it, secure or retain, without losing the right to attack the writ because improvidently issued, the same unfettered dominion over his property which he could exercise before the seizure was made or threatened. It was also argued that a bond given to discharge a void attachment is itself void, and that the attachment in this case being founded, as is admitted by the motion to strike out the affidavits, on a false affidavit, is void. This question will more properly arise in an action on the bond, but as the motion to discharge also embodies the further motion to annul the bond, we will consider the point. The general proposition that a void attachment will not sustain a bond given to discharge it or release the property is sustained by authority, and is sound on principle. Williams v. Skipwith, 34 Ark. 529; Bruce v. Conyers, 54 Ga. 679; Hamilton v. Merrill, 37 Ohio St. 685; Vose v. Cockroft, 44 N. Y. 415; Shevlin v. Whelen, 41 Wis. 93; Bank v. Mixter, 124 U. S. 728, 8 Sup. Ct. Rep. 718. But the attachment in this case was not void. There was jurisdiction to issue it. The power to grant the warrant rests not upon the fact of non-residence, but upon the fact that the affidavit states that the defendant is a non-resident. The statute provides that "the warrant may issue on affidavit stating," etc. § 4995 Comp. Laws. Said the court in Haggart v. Morgan, 5 N. Y. 422: "The fact itself is not jurisdictional, although competent proof of that fact is." And in Lovier v. Gilpin, 6 Dana, 321, the court observed: "The authority of the justice does not depend in any degree upon the truth of the statement made by the affiant, and on the ground of which the attachment issues, but upon the sufficiency of the statement itself when compared with the law. To prove the falsity of a statement which is sufficient in itself does not, therefore, disprove the authority or jurisdiction of the justice, nor prove nor make the process void for want of authority." See, also, Drake, Attchm. §§ 320, 397, note. The only case appearing to hold the contrary is Egan v. Lumsden, 2 Disn. 168. In the other cases

in which the courts have held the giving of the undertaking no destruction of the right to traverse the attachment affidavit, it has never been insisted nor intimated that the writ was void because the affidavit was false. The condition of the discharge bond as fixed by the statute indicates the legislative intent that the bond shall not be affected by the dissolution of the attachment, or by any other contingency than the failure of plaintiff to obtain judgment in the action. That condition is to pay the amount of the judgment that may be recovered against the defendant. The promise is absolute, because upon it the writ itself is discharged. The order of the district court is affirmed. All concur.