## ST. LOUIS CORDAGE MILLS v. WESTERN SUPPLY CO.

No. 6672.   Opinion Filed January 18, 1916.

(154 Pac. 646.)

1. **APPEARANCE—General Appearance—Motion to Dismiss.** Where defendant seeks to enter special appearance in a cause by motion and sets forth therein both jurisdictional and nonjurisdictional grounds for dismissal, the filing of such motion amounts to a general appearance, and the fact that he denominates it a special appearance avails him nothing.

2. **GARNISHMENT—Bond to Discharge Garnishee—Liability of Obligors.** Section 4838, Rev. Laws 1910, being section 5727, Comp. Laws 1909, provides: "The defendant may, at any time after the garnishment affidavit is filed, and before judgment, file with the clerk of the court an undertaking executed by at least two securities, resident freeholders of the state, to the effect that they will, on demand, pay to the plaintiff the amount of the judgment that may be recovered against such defendant in the action, with all costs not exceeding a sum specified, which sum shall not be less than double the amount demanded by the complaint on file, or in such less sum as the court, upon application direct." And sections 4839 and 5728, respectively, of the same statutes, contain the following: "If the judge find the sureties sufficient he shall annex the examination to the undertaking, indorse his allowance thereon, and cause them to be filed with the clerk of the district court.   Thereafter all the garnishees

St. Louis Cordage Mills v. Western Supply Co.

shall be discharged, and the garnishment proceedings shall be deemed discontinued, and any money or property paid or delivered to any officer shall be surrendered to the person entitled thereto." **Held,** that the execution, filing, and approval of a bond in compliance with these statutes, estops the defendant from questioning the regularity of the garnishment proceedings, and renders the obligors on the bond absolutely liable for the amount of any judgment the plaintiff may recover in the action, without regard to whether the garnishment proceedings were regular or not.

3. **SALES—"Warranty"—Representations by Seller.** No particular words or form of expression are necessary to create a warranty, nor need the word "warranty" be used. If the representation is positive and relates to a matter of fact, and not to an expression of opinion, and the other party receives the statement as true, and relies and acts on it in making a trade, such representation will constitute a "warranty."

4. **PRINCIPAL AND AGENT—Power of Agent—Sales—Warranty of Quality.** General authority given by a principal to an agent to sell personal property carries with it, by necessary implication, the power to warrant the quality of the property so as to bind the owner.

5. **SAME—Authority of Agent—Question for Jury.** The apparent authority of an agent is to be gathered from all the facts and circumstances in evidence and is a question of fact for the jury.

(Syllabus by Robberts, C.)

*Error from County Court, Tulsa County;*
*Conn Linn, Judge.*

Action by the Western Supply Company, a corporation, against the St. Louis Cordage Mills, a corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

*R. W. Kellough* and *Lee Daniel,* for plaintiff in error.
*Bell & Fellows,* for defendant in error.

Opinion by ROBBERTS, C. This action was brought in the county court of Tulsa county on the 19th day of April, 1913. The petition alleges that plaintiff is a domestic, and the defendant a foreign corporation; that in October, 1912, plaintiff purchased from defendant two

Trojan cables, for which it paid the sum of $925.53; that said purchase and sale was made under the express representation and warranty of defendant that said cables were first-class cables, of superior quality, and suitable for the use to which such cables were ordinarily put, viz., drilling, repairing, and operating oil and gas wells; that plaintiff relied on said warranty, and believed said representations and warranty to be true, and was induced thereby to make purchase thereof; but said cables were not of the quality represented, and were of an inferior grade and quality, and by much less than ordinary use they became stranded and drew, and unfit for the use and purpose for which they were purchased by plaintiff. Plaintiff further alleges that it sold said cables in its regular course of retail business, and, because of the inferior grade and quality thereof, it was compelled to pay to its vendee the sum of $300, which was a just and fair difference in the price paid to defendant for said cables and the actual value thereof, and by reason thereof plaintiff was damaged in the sum of $300, for which he prays judgment.

The parties will be designated plaintiff and defendant herein, the same as below.

After the commencement of the suit, plaintiff instituted garnishment proceedings against the Oklahoma Iron Works, a local corporation. The defendant attempted to question the jurisdiction of the court, because of irregularities in the præcipe for, as well as the issuance and service of, summons; but we find that all these objections were waived by the appearance of the defendant, at different times, and seeking to call into power the affirmative action of the court. The motion of defendant

to set aside and quash the summons, and service thereof, for the reason that the defendant had not been properly named, filed on the 23d day of May, 1913, does not raise or question the jurisdiction of the court, and especially is this true where the motion is not supported by affidavit or other offer of proof. On the same day and before the motion to quash had been passed on, the defendant filed a motion to discharge the garnishee, on the grounds: "(a) That the affidavit of garnishment was insufficient in law; (b) no bond for garnishment had been given."

All defects in the garnishment proceedings were waived by the defendant filing a bond, approved by the court, providing for the payment of the judgment and costs which might be rendered against it in such action. On the 1st day of July, 1913, the court entered an order discharging the garnishee in pursuance of said bond.

Section 4838, Rev. Laws 1910, provides that the garnishee may be discharged on giving bond for payment of the judgment. This statute was taken from Kansas, and, before its adoption in Oklahoma, the Supreme Court of that state, in *Washer v. Campbell*, 40 Kan. 747, 21 Pac. 671, said:

"Now, if the defendants in error in this case had a right, or would have had a right if said bond had not been given, in any manner to keep alive or preserve their garnishment proceedings so as to make them effective in satisfying the judgment which might finally be rendered in their favor 'on final hearing of this case' in the court in which the case might eventually be on such 'final hearing,' as they undoubtedly had such right, and if they gave up this right, as they undoubtedly did, for no other reason than merely the giving of the bond sued on in this case, then there was certainly a sufficient consideration

for the giving of the bond, in whatever way it may be construed."

Our own court, in an attachment proceeding, in *Moffitt v. Garrett*, 23 Okla. 398, 100 Pac. 533, 32 L. R. A. (N. S.) 401, 138 Am. St. Rep. 818, says:

"An obligor on a bond to discharge an attachment, under the provisions of section 4404, Wilson's Rev. & Ann. St. Okla. 1903, conditioned that the defendant will perform the judgment of the court in the action in which the attachment is issued, is absolutely liable in an action against him on the bond for the amount recovered in the action in which the bond was given, without reference to the question whether the attachment was rightfully or wrongfully issued, and the defendant is precluded by such bond from controverting the grounds of the attachment."

The case of *Myers v. Smith*, 29 Ohio St. 120, is clearly in point, wherein the rule is laid down that where, in an attachment proceeding, to obtain a release of the attached property, the defendant entered into an undertaking, agreeing to pay the judgment of the court, the effect of the bond was to supersede all proceedings under the attachment, and to bind the sureties on the bond, and to estop the defendant from controverting the attachment.

There are many authorities holding that the obligors on such bonds are absolutely liable for the amount of the judgment recovered, within the limits of the bond, without regard to whether the attachment was rightfully or wrongfully obtained. Among which are *Rachelman v. Skinner*, 46 Minn. 196, 48 N. W. 776; *Gardner v. Donnelly*, 86 Cal. 367, 24 Pac. 1072; *Fox v. MacKenzie*, 1 N. D. 298, 47 N. W. 386; *McLaughlin v. Wheeler*, 1 S. D. 497, 47 N. W. 816; *Bunneman v. Wagner*, 16 Or. 433, 18 Pac. 841, 8 Am. St. Rep. 306; *Brady v. Onffroy*, 37 Wash. 482,

79 Pac. 1004; *Ferguson v. Glidewell,* 48 Ark. 195, 2 S. W. 711.

This disposes also of the question of the verification of the garnishment affidavit. All defects were waived by giving the bond.

On the 6th day of February, 1913, the defendant answered by general denial—not verified. On the 5th day of December, 1913, the case was called for trial. We gather from the record that after the jury was impaneled and sworn to try the case, and the opening statements made by counsel, and the witnesses sworn, the defendant filed an amended answer, containing (a) a general denial; (b) denying expressly that defendant is a corporation. Thereafter, on the same day, plaintiff moved to strike the amended answer from the files. This motion was sustained, and exceptions saved. The defendant then moved the court for leave to verify the original answer, filed on the 6th day of August, 1913. To this the plaintiff objected, "for the reason that a verification of said answer would place upon plaintiff the burden of proving the corporate existence of the defendant." To this the following ruling was made:

By the Court: "A verified denial, such as is offered by the defendant, does not put the corporate existence of defendant in issue."

Thereupon leave to verify was granted, and plaintiff saved exceptions. The record fails to show that defendant took advantage of the permission of the court to verify the answer—probably because of the statement of the court as to the effect of the verification of the general denial. By failure to verify the answer, the incorporation was admitted by defendant. Upon these issues the case

was tried to a jury, which resulted in a verdict and judgment for plaintiff for $300. Motion for new trial was overruled, and defendant brings error. Counsel for defendant make some thirteen assignments of error, but in their briefs seem to contend for three propositions only, as follows: ·

"First. The court erred in not dissolving the garnishment proceedings and discharging the garnishee.

"Second. The court should not have permitted judgment to be entered against the defendant, and the motion for new trial should have been sustained.

"Third. The court erred in its application of the rule as to measure of damages."

The first proposition, as to the garnishment proceedings, has heretofore been disposed of against the contentions of the defendant. By giving the bond to respond to the judgment the defendant waived all errors as to the garnishment proceedings.

The second proposition, that the court erred in overruling the motion for new trial, is certainly too general; but we will try to consider such matters as counsel present in their briefs and argument. The action of the court in not permitting the defendant to file amended answer was discretionary. The only question is: Did the court, under all the circumstances, abuse that discretion? We think not. The case had been pending in the county court for about nine months; the original answer was filed on the 6th day of August; the offer to amend by denying the existence of the corporation was on the 5th day of December, after the jury had been impaneled and sworn to try the case; the witnesses had been subpœnaed and sworn; the opening statements of counsel

St. Louis Cordage Mills v. Western Supply Co.

made. No excuse for failure to enter this plea sooner was made or offered. We cannot say that there was an abuse of discretion on the part of the trial court in so ruling.

The same may be said of the application for continuance. Under this head counsel for defendant also contend, in substance, that neither the petition nor the evidence is sufficient to authorize a recovery upon an express warranty. Without again quoting the pertinent part of the petition, we may admit that the allegations were somewhat meager in that particular; but we think they were sufficient, in the absence of any motion to make more definite and certain. The question of the sufficiency or weight of the evidence was for the jury. There was some evidence tending to support the findings and verdict of the jury. It has so often been decided that, where there is any evidence to support the verdict, it will not be disturbed by this court, that it seems unnecessary to cite authorities thereon. On the question of the sufficiency of the evidence to establish an express warranty, the court correctly instructed the jury as follows:

"The court instructs the jury that no particular words or form of expression is necessary to create a warranty, nor need the word 'warranty' be used. If the representation is positive and relates to a matter of fact, and not to an expression of an opinion, and the other party receives the statement as true, and relies and acts on it in making a trade, such representation will constitute a 'warranty.'"

In 31 Cyc. 1353, it is said.

"It seems not to be doubted that general authority given by a principal to an agent to sell personal property carries with it, by necessary implication, the power to warrant the title to the property so as to bind the owner."

And in *Ricker Nat. Bank v. Stone,* 21 Okla. 833, 97 Pac. 577, it is said:

"The apparent authority of an agent is to be gathered from all the facts and circumstances in evidence, and is a question of fact for the jury."

Defendant claims that there was attached to the cables, whe nsold, a card, the purport of which was to notify the plaintiff or other purchaser in writing that "defendant sells no goods with a warranty," and that this fact rebuts the proposition that the articles were sold with a warranty. A complete answer to that is that the record fails to show that this card was brought to the attention of the plaintiff, and if there was any evidence tending to show it, it was a question for the jury.

The question of the amount of recovery was likewise a question of fact, and properly left to the jury.

From a careful consideration of the entire record, we are unable to say that any prejudicial error was committed by the trial court, and therefore the judgment should be affirmed.

By the Court: It is so ordered.