## REYNOLDS v. BINDING-STEVENS SEED CO. et al.

No. 26705. March 30, 1937.

Rehearing Denied April 27, 1937.

C. A. Coakley, for plaintiff in error.

Underwood, Canterbury, Pinson & Lupardus, for defendants in error.

CORN, J. This is an appeal from the district court of Tulsa county by the plaintiff from an order of that court sustaining defendants' demurrer to the evidence and instructing a verdict for the defendants. The parties occupy the same position in this court as they occupied in the lower court, and will be so designated herein.

Reynolds, the plaintiff, by his amended petition, charged that the defendants sold him 200 pounds of onion seeds "sold and warranted to be good Yellow Prize Taker seed"; it is charged that the seed was not of the type sold and that plaintiff lost his crop. He sued for the prospective profits if the seed had been as warranted.

The answer denies that there was any warranty or representation as to the kind or quality of the seed, and that no person selling any seed had the authority to pretend to warrant the seed, and that the defendant advised the plaintiff by correspondence and invoice and by shipping tag and by a ticket showing weight and stock number of the seeds inside the sack, in each instance, that there was no warranty. A portion of the onion seeds, it was alleged, was returned during the crop year for a refund of a portion of the purchase price, and that at that time no complaint was made. The answer further alleges that there was a fair crop from the seeds sold.

During the course of the trial and by agreement between the parties, the Binding-Stevens Seed Company, a corporation, was substituted as a defendant for the Ft. Smith Seed Company, a partnership, and said corporation appears now as principal defendant herein.

Reynolds testified that the ground on which he planted the seeds was the best onion raising ground; that he talked with the salesman about it and then went down to Ft. Smith and talked with Mr. Ross Binding; told him he wanted 200 pounds of Yellow Prize Taker seed, new crop, enough to plant 50 acres; Mr. Binding told him that they would have to come from California; it was about the first of March when the shipment of seeds came; and when they came up none of them were Prize Taker onions.

Defendants' exhibit 1 is in plaintiff's handwriting, and is as follows:

"The Brown Trading Company,
"Everything in Merchandise.
"Weleetka, Oklahoma.
"Feby. 9-25
"Ft. Smith Seed Co.,
"Ft. Smith, Ark.

"Gentlemen: I understand from your letter that you did not have any Prize Taker onion seed in stock but was waiting for shipment to come in if you cant get them to me by the last of this week please let me know promptly.
"Yours truly,
"J. F. Reynolds."

Prior to that, on February 7th, defendants' exhibit 2 had been mailed by the defendant, Ft. Smith Seed Company, to Mr. Reynolds, and defendants' exhibit 1, in his

own handwriting, was the response to defendants' Exhibit 2, which is as follows:

"Use Robinson's Code

"Cable Address 'Fortseed'

"Fort Smith Seed Company, Inc.

"Garden, Field and Flower Seeds;

"Poultry, Bee and Dairy Supplies.

"Quotations are subject to market changes and goods being unsold. Prices are F. O. B. Fort Smith unless otherwise specified.

"Ft. Smith, Ark.
"February 7, 1925

"J. T. Reynolds.

"Weleetka, Oklahoma

"Dear Sir: Notice: Fort Smith Seed Company give no warranty, express or implied, as to description, quality, productiveness or any other matter of any seeds, bulbs or plants we send out and we will not be in any way responsible for the crop. If the purchaser does not accept goods on these terms, they must be returned at once and any money paid for same will be refunded.

"Thanks for your order given our Mr. Spears. We regret that we will be unable to supply Crystal White Wax onion seed. We have some Yellow Bermuda which we offer at $4.00 per lb. If you can use this please advise.

"We are expecting our Prizetaker onion seed to arrive within the next day or two and will forward this promptly on arrival which trust will be satisfactory.

"Yours very truly,
"Fort Smith Seed Co."

"M/B"

Thereupon, defendants' Exhibit 3 was forwarded by the Fort Smith Seed Company. That letter reads as follows:

"February 10, 1925

"J. T. Reynolds

"Weleetka, Oklahoma

"Dear Sir: Notice: Fort Smith Seed Company give no warranty, express or implied, as to description, quality, productiveness or any other matter of any seeds, bulbs or plants we send out and we will not be in any way responsible for the crop. If the purchaser does not accept goods on these terms, they must be returned at once and any money paid for same will be refunded.

"Replying to your favor of the 9th, wish to state that the onion seed is in transit from California by express. These should arrive within the next 2 or 3 days and will then be forwarded on to you promptly.

"Yours very truly,
"Fort Smith Seed Co.

"M/B"

The plaintiff did not know whether there was or was not a tag, such as defendants' exhibit 5, or a slip, as defendants' exhibit 6, attached to the shipping sack or placed inside of it. Defendants' exhibit 5 is a shipping tag printed in the following manner:

Obverse:

"To_____

_____

_____

"Value

"$_____

"From Ft. Smith Seed Company.

"Seeds,

"Poultry, Bee

"And Dairy Supplies,

"Ft. Smith, Ark.

"Fort Smith Seed Company,

"Perfection Brand Seeds,

"Ft. Smith, Ark."

Reverse:

"Our Test

"Seed _____

"Brand _____

"Purity _____

"Germination _____

"Date germ _____

"Weed Seed _____

"Inert matter _____

"Where grown _____

"Stock No. _____

"Noxious weed seed in excess of 1 to 5 grams _____

"Notice: We give no warranty, express or implied as to description, quality, productiveness or any other matter of any seeds, bulbs or plants we send out and we will not be in any way responsible for the crop. If the purchaser does not accept goods on these terms, they must be returned at once and any money paid for same will be refunded. All sales made by us on above conditions only. Fort Smith Seed Co."

Defendants' Exhibit 6 is a white slip printed as follows:

"_____ Weight _____

"_____ Stock No. _____

"_____ Packed by _____

"Fort Smith Seed Company,

"322-324 Garrison Ave., Fort Smith, Ark.

"Garden, Field and Flower Seeds.

"Notice—Fort Smith Seed Co. gives no warranty, either express or implied, as to description, quality, productiveness or any other matter of any seeds, bulbs or plants we send out and we will not be in any way responsible for the crop. If purchaser does not accept goods on these terms, they may be returned at once and any money paid for same will be refunded."

The record contains another letter dated February 18, 1925, to Mr. Reynolds, the plaintiff, from the Fort Smith Seed Company (defendants' Exhibit 10), which is as follows:

"Use Robinson's Code
"Cable Address 'Fortseed'
"Fort Smith Seed Company. Inc.
"Garden, Field and Flower Seeds, Poultry,
"Bee and Dairy Supplies.

"Quotations are subject to market changes and goods being unsold. Prices are F. O. B. Fort Smith unless otherwise specified.

"Fort Smith. Ark.
February 18, 1925,
"J. T. Reynolds,
"Weleetka, Oklahoma.

"Dear Sir: Notice: Fort Smith Seed Company gives no warranty, express or implied, as to description, quality, productiveness or any other matter of any seeds, bulbs or plants we send out and we will not be in any way responsible for the crop. If the purchaser does not accept goods on these terms, they must be returned at once and any money paid for same will be refunded.

"We regret that we have had a delay in our shipment of onion seed. We received only part of it today and we are sending you 60 lbs. at once by express. We feel certain that the balance of it will arrive tomorrow and we will forward promptly on arrival which trust will be satisfactory.

"Very truly yours,
"Fort Smith Seed Co."
"M/B"

The invoice, which is dated February 23, 1925, is as follows:

"Fort Smith Seed Co.
"322-324 Garrison Ave.
"Fort Smith Seed Company Perfection
"Brands Seeds; Garden, Field and Flower
"Seeds; Poultry, Bee and Dairy Supplies,
"Fort Smith, Ark.
"Fort Smith, Ark., 2-23-25.
"Shipped Via Express
"Terms COD
"Order No.
"Salesman House

"Sold to J. F. Reynolds, Weleetka, Okla. Notice: We give no warranty, either express or implied, nor will we be responsible for the crop. If not accepted on these conditions. goods must be returned at once. All sales made by us on above conditions only. Fort Smith Seed Co. Interest charged at 10% on past due accounts.

"140 lbs. Onion Yellow Prizetaker .95    133.00
"4 sx                              .50      2.00
                                         ———————
                                          135.00

"Claims for shortage or overcharge must be made immediately on receipt of goods. No credit allowed on goods returned without written order from this office. Goods in transit at buyer's risk."

The court instructed a verdict for the defendants on the theory that the written communications constituted a contract between the parties of no warranty.

The only matter for this court to consider is plaintiff's proposition: "Nonwarranty clauses or disclaimers of warranty printed on letters, invoices or other literature, are evidentiary only and do not establish nonwarranty as a matter of law." Under this proposition, plaintiff cites the following cases: St. Louis Cordage Mills v. Western Supply Co., 54 Okla. 757, 154 P. 646; Manglesdorf Seed Co. v. Busby, 118 Okla. 255, 247 P. 410; Morehead v. Minneapolis Seed Co., 139 Minn. 11; Edgar v. Joseph Breck & Sons Corp. (Mass.) 52 N. E. 1083; and Longino v. Thompson (Tex. Civ. App.) 209 S. W. 202.

In St. Louis Cordage Mills v. Western Supply Co., supra, the court said:

"Defendant claims that there was attached to the cables, when sold, a card, the purport of which was to notify the plaintiff or other purchaser in writing that 'defendant sells no goods with a warranty,' and that this fact rebuts the proposition that the articles were sold with a guaranty. A complete answer to that is that the record fails to show that this card was brought to the attention of the plaintiff, and if there was any evidence tending to show it, it was a question for the jury."

In other words, if there was a dispute as to whether the card was brought to the attention of the plaintiff, then the jury must decide it. If it was definitely established that the plaintiff had notice, and there was no conflict in the evidence, certainly the written statement would overcome the presumption of an implied warranty.

In the case of Manglesdorf Seed Co. v. Busby, supra, certain evidence of nonwarranty was offered and rejected by the court. The invoice was the only place in the entire negotiations in which any nonwarranty clause appeared. On that invoice was printed the following:

"All seeds are selected with the greatest of care, but we give no warranty, express or implied, nor will we be responsible for the crop. No claim will be considered unless made immediately upon receipt of goods."

The court said that the weight and value of the evidence was for the jury; however,

in that case there was a mere communication by invoice which might or might not have come to the attention of the plaintiff.

The same is true in Morehead v. Minneapolis Seed Co., supra, and again in Edgar v. Joseph Breck & Sons Corp., supra, we find the "usual printed disclaimer" on the invoices, which it said "did not establish nonwarranty as a matter of law."

The shipment in Longino v. Thompson, supra, was accompanied by a billhead containing a nonwarranty clause. In that case a peremptory instruction was awarded the defendant, and the judgment entered in accordance therewith. It is said:

"The contracts did not consist of a mail order, and the shipment of the seed accompanied by a notice of nonwarranty, and request to return the seed if unwilling to purchase on such terms, but were made over the telephone, and to say the least the notice on the bills could not affect such contract, unless it came to the notice of appellant prior to the planting of the seed. Appellant denied having read the notice on any of the bills."

In the case at bar there can be no question that the plaintiff received and answered the letter of February 7, 1925, defendants' exhibit 2. The first paragraph of that letter contains the nonwarranty provisions and the notation that: "If the purchaser does not accept goods on these terms they must be returned at once and any money paid for same will be refunded." The letter of February 7, 1925, from the defendant referred to Crystal White onion seed, Yellow Bermuda seed and Prizetaker, stating that the last named would arrive "within the next day or two." The letter of Mr. Reynolds to the company states:

"I understand from your letter that you did not have any Prize Taker onion seed in stock, but was waiting for shipment to come in if you cant get them to me by the last of this week please let me know promptly."

Again, on February 10th, answering the letter of the 9th and expressly referring to that letter, Mr. Reynolds was again advised that "Fort Smith Seed Company gives no warranty, express or implied, as to description, quality, productiveness or any other matter of any seeds, bulbs, or plants we send out 'and we will not be in any way responsible for the crop. If the purchaser does not accept goods on these terms they must be returned at once and any money paid for same will be refunded." The letter then proceeded to advise that the onion seed

was in transit from California and would be forwarded within 'a few days.

On February 18th, Mr. Reynolds was again in receipt of a letter which informed him that the Fort Smith Seed Company made no warranty as to description or quality, and that 60 pounds of the onion seeds were being sent by express.

When the plaintiff received the letters, if he read his own address and the words "Dear Sir," he must inevitably have read the nonwarranty clause. The nonwarranty clause referred to his purchase, was 'a part of the agreement, and he could no more have ignored that than he could ignore any provision of a written contract.

Judgment of the trial court is affirmed.

OSBORN, C. J., and BUSBY, WELCH, and GIBSON, JJ., concur. BAYLESS, V. C. J., and RILEY and PHELPS, JJ., dissent. HURST, J., not participating.