VALERIAN LOUIS PERRIN ET AL., PARTNERS, &c., DE-
FENDANTS IN ERROR, v. UNITED STATES EXPRESS
COMPANY, PLAINTIFF IN ERROR.

Argued June 22, 1909—Decided November 15, 1909.

1. In the absence of evidence or circumstances tending to show the
   contrary, a person who personally, or by his duly-authorized
   agent, prepares a writing, will be deemed to know the contents
   of such writing.
2. Where a shipper tenders to a common carrier a form of receipt
   for goods to be carried which contains a limitation of the car-
   rier's liability, and the carrier assents to its terms, the shipper
   is bound thereby, notwithstanding the receipt may be in a blank
   form furnished by the carrier.

On error to the Supreme Court.

This suit was brought to recover damages for the loss of a
case containing gloves, delivered by the plaintiffs at their
factory in the city of Plainfield, in this state, to the defend-
ant for shipment by express to their store in the city of New
York.

On April 6th, 1906, the driver of the express company, in
making his rounds, called at the factory of the plaintiffs
and there received a case containing some eighty or more
dozen pairs of gloves, which had been nailed up and ad-
dressed and was ready for delivery to him.

The servant of the plaintiffs, who acted principally in the
capacity of janitor, packed the goods in question, nailed it
up and marked the address upon it and took the box down-
stairs to the place where the express company received it.
This witness testified that plaintiffs had a book of forms of
receipts that were bound together, and that it was customary
as soon as a case was ready for shipment for him to write the
address and date on the receipt and the articles consigned
and place the book usually on top of the case and leave it
there for the driver; that on this particular occasion, as it
was a large case, the driver needed assistance, and therefore

he remained until the driver called and filled out the receipt, and that, in addition to his duties as janitor, he was the person who actually made the shipments from the factory to the express company.

The receipt was contained in a book of receipts, some of which had been used, leaving the remainder in blank for future use. The driver having taken the case to the company's bill clerk at the railroad station, where it was weighed and the express charge ascertained, the next morning collected the charge from the plaintiffs. Each page of this book was in itself a receipt with spaces below for the entries connected with each shipment—that is, for the date, description of the articles, its value, the name of the consignee, destination and the charges and signatures of the company's agent or driver. The book was put in evidence by the defendant. The first entry in it was made more than a year previous to the shipment in question. It was kept in the office of the plaintiffs, and was always there except when it was left with a package intended for shipment so that the driver could sign it when he received it.

These receipts were usually filled out before the driver came, by the shipping clerk of the plaintiff or bookkeeper, or by another who helped the bookkeeper.

In the record of the many shipments shown by the book, in no case was the value of the articles shipped before this suit was brought given. In nearly every instance the used pages of the book at the top line, under the word "value," was written the words "value asked and not given," or the words "not given," and on the several lines below under these words were "ditto marks," indicating as to each successive shipment that the value had not been given.

The receipt in question provided that in case of any loss or damage no demand should be made upon the company "beyond the sum of $50, at which sum said property is hereby valued, unless the just and true value thereof is stated herein." The words "fifty dollars" are italicized. At the end this provision, also italicized, is contained: "The party accepting this receipt hereby agrees to the conditions herein

contained." In a heavier and large type at the end of the receipt it is stated: "The liability of this company is limited to $50, unless a greater value is stated in this receipt."

The defendant, prior to the bringing of this suit, tendered to the plaintiffs $51.33, being the amount of express charges, $1.05 and $50 the amount of its limited liability under the contract and twenty-eight cents interest, and in its plea set up this tender in defence of the action. The fact and the amount of the tender are undisputed.

It appeared that the rate charged the plaintiffs for the shipment was less than would have been charged if the true value had been given. The defendant acknowledged its limited liability under the contract for the amount tendered and requested that the trial court direct a verdict against it for that amount, which was refused. The trial judge submitted the case to the jury, who found a verdict for the plaintiffs for $1,068.09. The defendant has assigned error on this ruling.

For the defendants in error, *Samuel Koestler.*

For the plaintiff in error, *E. A. & W. T. Day.*

The opinion of the court was delivered by

VOORHEES, J. The stress of attack upon the judgment brought here by this writ of error is against the refusal of the trial court to direct the jury to render a verdict against the defendant for $51.33, the amount tendered to the plaintiff, representing the express charges paid by the plaintiff, and $50 the amount to which the defendant's liability was limited by the terms of the written express receipt.

The plaintiffs resist this attack by saying that the receipt is not a contract, that it did not become such by its mere reception by them without their assent, citing *Hayes* v. *Adams Express Co.,* 44 *Vroom* 105, *affirmed,* 45 *Id.* 537, and further, that the burden lies upon the defendant to prove such assent. In *Russell* v. *Erie Railroad,* 41 *Id.* 808, we held that a carrier might lawfully contract specially to limit its

common law liability for any loss, except such as might arise by its negligence or misfeasance, and in *Atkinson* v. *New York Transfer Co.,* 47 *Id.* 608, we also held in the language of the learned Chief Justice delivering the opinion of this court: "The carrier is entitled to be compensated for his services in proportion to the value of the article consigned and the consequent risk assumed by him. The shipper is entitled to take the benefit of a lower rate, if he desires to do so, by placing a value upon his goods for the purpose of their shipment, below their actual worth. Such a stipulation stands as if the carrier had asked the value of the goods shipped, and had been told by the consignor that it was the sum named in the contract. * * * It exacts from the carrier the measure of care due to the value agreed on, and is, we think, a proper and lawful mode of securing a due proportion between the amount for which the carrier can be held responsible, and the charges received by it as a consideration for the safe transportation of the goods shipped."

This case did not go to the length that the courts of many of our sister states have gone in holding that the shipper receiving a bill of lading is conclusively presumed to have read it and acquiesced in its terms, in the absence of fraud, imposition and mistake. (See 6 *Cyc.,* where the cases are collected.) The case under review does not call for a decision on that point. The Atkinson case, *supra,* however, did declare that if a shipper has knowledge that the express charges are based upon a value placed on the goods by him which is less than their real value, and is specified in the receipt, coupled with a clause limiting the carrier's liability to the specified amount, he may not, having accepted such receipt in silence, afterwards repudiate that he assented to the valuation and recover the full amount of his loss.

The case in hand, however, is one where the plaintiffs must be held to have drawn the contract, and by their own language to have limited the liability of the carrier, to which it has assented. The plaintiffs had knowledge of the entire contents of the receipt, for they had by their agents in charge of

shipping the goods prepared it and tendered it to the defendant, contrary to the general course of such transactions, where customarily the receipt is filled out by the carrier and tendered to the shipper.

Although it was written upon blanks furnished by the carrier, yet these blanks had been in the possession of the shippers and had been uniformly used and filled out by them in their usual course of shipping goods for more than a year previous to the transaction in question, and were tendered by them to the defendant, and so had been adopted by the plaintiffs as embodying their own contract.

In the absence of evidence or circumstances tending to show the contrary, a person who personally, or by his duly-authorized agent, prepares a writing, will be deemed to know the contents of such writing. And so here the contents of the receipt prepared and furnished by the plaintiffs by their agent accustomed to prepare such receipts and tendered by the plaintiffs to the defendant for signature will be presumed to have been known by the plaintiffs. They have not attempted to rebut this presumption.

Here, then, we have essentially a case of the shipper limiting the liability of the carrier, not the usual one where the carrier has sought to do so. The plaintiffs themselves incorporated in it a provision that the goods covered by it would be valued at $50, unless the true value was stated therein; that the liability of the company was limited to $50, unless a greater value was stated in the receipt; and that the party accepting the receipt agreed to the conditions therein, and having thereafter at the time of making the shipment received the receipt from the carrier and retained it without objection with such knowledge, the plaintiffs must be held to be bound by its terms, as a contract put forward by themselves.

The court should, therefore, have directed a verdict for the plaintiff for the amount of the sum tendered.

The judgment of the Supreme Court is reversed, and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, CONGDON, JJ.    14.