SCHAFF, Rec., v. KRAMER.

No 13559—Opinion Filed March 31, 1925.

**1. Carriers—Regulation by Corporation Commission—Rates Based on Classifica-tion of Cattle and Shipper's Valuation.**

Article 9, sec. 18, Constitution of the state of Oklahoma, confers upon the Corporation Commission of this state power to super-vise, regulate, and control all transporta-tion companies doing business in this state in all matters relating to the performance of their public duties, and the Corporation Commission, by virtue of the constitutional provision, has the power to adopt and pro-mulgate orders regulating the shipment of cattle from one point in the state to an-other point therein, and prescribing the rates of freight to be charged for the car-riage of the various kinds. classes, grades, of cattle, and to provide different rates based upon shipper's valuation, provided such order is just and reasonable,

**2. Carriers — Bill of Lading — Statutory Definition.**

Under section 4919, Comp. St. 1921, a bill of lading is a "contract in writing," describ-ing the freight so as to identify it, stating the name of the consignor, and the terms of the contract of carriage.

**3. Same — Bill of Lading as Evidence of Value in Action for Damages to Cattle.**

Where plaintiff ships cattle over carrier's lines under a bill of lading as defined by statute, and in such shipper's contract ap-pears a notice to the shipper to place his own valuation on the various classes of cattle, and the valuations placed thereon are stated in said contract, held. on action brought to recover damages for a portion

of the cattle killed by the negligence of the carrier, the contract signed by the shipper or his agent is competent evidence.

**4. Same—Rate Order of Corporation Commission as Evidence.**

When the Corporation Commission has published an order prescribing the freight rates to be charged by common carriers within this state, and such order so promulgated provides for certain rates to be charged on certain kinds, grades, or values of cattle, held, in an action to recover damages for the killing of any cattle so shipped, through the negligence of the carrier, the order of the Corporation Commission is competent evidence to prove the rates so fixed, and to prove the cattle shipped were within a certain class and valuation placed thereon by the shipper and the lawful rates for such class or valuation.

**5. Same—Defensive Evidence as to Rates and Classifications.**

Where defendant carrier, in an action brought to recover damages for the negligent killing of a calf shipped over its lines, offers testimony to prove the freight rates actually charged by such carrier and paid by the shipper, under his contract of shipment, such testimony is competent for the purpose of showing the class under which the plaintiff shipped his cattle.

**6. Same—Shipper's Valuation Conclusive on Liability.**

When plaintiff ships cattle under written contract wherein he is directed to place his value thereon, for the purpose of determining the freight rate to be charged, and the shipper fixes the value of calves at $20 each, and one of the calves is killed in transit through the negligence of the carrier, the sum of plaintiff's recovery may not exceed the valuation placed upon such calf by the shipper at the time of the signing of the contract.

**7. Same—Estoppel of Shipper.**

Where plaintiff, for the purpose of obtaining a low freight rate, places a valuation upon cattle shipped over defendant's lines, the law of estoppel concludes the plaintiff from recovering, for the loss of any one of such cattle, a sum greater than the valuation so placed thereon at the time of shipment.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Tulsa County; W. B. Williams, Judge.

Action by John T. Kramer against C. C. Schaff, as receiver of the Missouri, K. & T. Ry. Co. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

M. D. Green and H. L. Smith, for plaintiff in error.

Poe & Lundy, J. E. Curren, and R. E. Morgan, for defendant in error.

Opinion by RUTH, C. This was an action filed in the district court of Tulsa county, by the defendant in error, plaintiff below, against the plaintiff in error, defendant below, wherein it was sought to recover for the death of a calf while being shipped over the defendant railway. For convenience the parties will be designated as they appeared in the trial court.

Omitting formal parts, plaintiff's petition alleges he shipped a car of cattle, containing 9 cows, 3 bulls, 2 calves, and 9 sheep, over the defendant road from Tulsa to Oklahoma City; that by reason of the negligent operation of the train on which the cattle were shipped one roan heifer calf of the value of $1,200 was killed, and plaintiff prays judgment for this amount.

Defendant for answer states it received the car from the connecting carrier, Midland Valley Railway company, consigned by plaintiff to himself, and forwarded to plaintiff under a written contract; that the terms and provisions of the contract inured to the benefit of the connecting carrier.

Defendant further states that by the terms of said contract it was provided that the shipper should load, unload, and reload said cars and see same were securely fastened and in good condition and repair, and should feed and water said livestock and attend to them while in the carrier's stock yards, pens, or said cars at his own cost and expense; that the contract provided the rates applicable to the transportation of said shipment were determined by the value thereof, and the plaintiff declared the value of each calf to be $20 and the freight rate charged and collected was based on such declared valuation of each calf, and if the plaintiff is entitled to recover at all, he is not entitled to recover more than $20. Defendant further states no agent of the carrier had any authority to waive, modify, or amend any of the provisions of said contract, or to agree to ship the cars by any particular train, or to reach any particular market, and further pleads contributory negligence, and attaches copy of contract.

"Exhibit A

"Midland Valley Railroad Company. Live Stock Contract. Not Negotiable.

"(243)   Bixby, Okla.—9-18-1917.

"This agreement made this 18th day of September, 1917, by and between The Mid-

land Valley Railroad Company and John T. Kramer.

"Car Nos.   Initials   No. of head.   Way-bill
"45 268   M. K. & T.   X   M. V. 314.
"51 491   M. P.   X   M. V. 315.
"3 attendants in charge of this shipment for which attendants transportation. Form 244 duly issued of this day and date.

'Witnesseth, that the carrier has received from the shipper, subject to the classifications and tariffs in effect on the date of issue of this agreement, the live stock described below, in apparent good order, except as noted, consigned and destined as indicated below, which the carrier agrees to carry to its usual place of delivery at said destination if on its road, otherwise to deliver to another carrier on the route to said destination.

"It is mutually agreed, as to each carrier of all or any, of said live stock over all or any portion of said route to destination, and as to each party at any time interested in all or any of said live stock, that every service to be performed and every liability incurred in connection with said contract shall be subject to all the conditions, whether printed or written, herein contained (including conditions on back hereof) and which are agreed to by the shipper and accepted for himself and his assigns.

"Different rates of freight are in effect for live stock of different values.

"The rate applicable to the shipment hereunder is determined by its value.

"The value is stated by the shipper as follows:—(Note: If the value is higher than as printed below erase and insert proper value.)

Each horse or pony (gelding, mare, or stallion) mule, jack, or jenny _____ $150 each.
Each colt under one year _____ $ 75 each.
Each ox bull or steer (bulls) __ $ 75 each.
Each (cows) _____ $ 50 each.
Each calf _____ $ 20 each.
Each hog _____ $ 15 each.
Each sheep _____ $ 5 each.

"Consigned to John T. Kramer. Destination,—Oklahoma City, —Oklahoma. Route—Tulsa M. K. and T.

"No. and Description of stock.
"(Shippers load and count.)
Weight
(Subject to correction)

9 Cows
3 bulls
2 calves
9 sheep

44000

"If charges are to be prepaid, write or stamp here. 'To be paid.'
Collect

"Midland Valley Railroad Co.,
"By T. Ford, J. Ft. Agent.

"Witness my hand John T. Kramer, shipper.
"By C. C. Cline, Shippers agent.
"C. H. Curtis—Witness"

The contract further provides as follows:

"The signature of the shipper or his agent hereto is and shall be conclusive evidence that the shipper fully understands and assents to all the provisions of the foregoing."

After reply filed the cause was tried to a jury and verdict returned for the plaintiff fixing his damages at $1,000, and judgment rendered thereon, and after motion for a new trial filed and overruled this cause was regularly brought here for review upon petition in error and case-made. Defendant presents nine specifications of error and presents them under five propositions: First, the shipping contract executed by the initial carrier through his agent, C. C. Cline, governed the rights and liabilities of the parties, and the same should have been received in evidence, together with the certified tariffs, and the jury should have been instructed that plaintiff could not recover more than $20, the figure stipulated in the shipping contract as the value of the animal in question. Charles C. Cline, for plaintiff, testified he loaded the cattle and, with two other men accompanied the cattle; that witness was in the car containing the calf and its mother, and that he had accompanied shipments of cattle belonging to plaintiff on previous and subsequent occasions, and identified his signature to the shipping contract.

Plaintiff, T. Kramer, testified he was present when the cattle were loaded at Bixby, that he had had about eight years experience in shipping cattle by railroad and paid the freight charges at destination.

Defendant offered in evidence the "live stock contract" signed by C. C. Cline, shipper's agent, C. H. Curtis, witness, witness to the contract being one of the men with Cline in charge of the plaintiff's shipment.

The contract offered by the defendant contained, above the signature of Cline, the following:

"Different freight rates are in effect for live stock of different values. The rate applicable to the shipment hereunder is determined by its value. The value is stated by the shipper as follows; this is followed by the valuation of the livestock in which appears the following: Each calf—$20 each."

Plaintiff further offered in evidence the order of the Corporation Commission of the state of Oklahoma, fixing the freight rates on live stock, and that such rate was fixed at 17 cts. per hundredweight, and was predicated upon animals of the following valuations: "Cows $50; calves $20, each," and further provided the carrier might require a statement of value, and a sliding scale was embodied in the order of the Corporation Commission for cattle shipped in condition for slaughter "and otherwise."

This evidence was excluded by the court over the objection of the defendant, as was the proffered evidence of the rate actually paid by the plaintiff.

To the ruling of the court in so excluding the evidence, defendant excepted.

The Corporation Commission is, by the Constitution of the state, art. 9, sec. 18, given power and authority and is charged with the duty of "supervising, *** regulating, and controlling all transportation *** companies doing business in this state in all matters relating to the performance of their public duties and their discharge thereof, and of correcting abuses and preventing unjust discrimination *** by such companies, and to that end the commission shall prescribe and enforce *** such rates, charges, classifications of traffic rules and regulations *** as may be reasonable and just." Sections 2 and 3, Sess. Laws 1913 (sec. 3463-3464, Comp. St. 1921), also section 3467, Comp. St. 1921, and section 3499, Comp. St. 1921, provide the commission may punish for contempt "any person, firm, or corporation failing to obey or comply with any order or requirement of the commission."

Section 828, Rev. Laws 1910 (section 4919, Comp. St. 1921), provides for the "terms of the contract for carriage" to be incorporated in "the instrument in writing" known as the bill of lading.

The order of the Corporation Commission was offered in evidence for the purpose of showing the rates fixed for certain shipments, and the same were predicated upon the values of the cattle. The evidence was essential to the defense, and was material and relevant, and its exclusion was error. Defendant offered in evidence the deposition of Ralph T. Hemphill for the purpose of showing the rates charged for the shipment upon which this action is founded, the rate actually paid by the shipper, and the rates so paid were the lawful rates specified in tariffs then published and on file, and approved by the Corporation Commission, and were predicated upon the animals at the following valuations: "Cows $50, Calves $20."

This evidence was material and relevant for the reason that if it could be shown the plaintiff fixed his own valuations and paid only the amount scheduled by law on such valuations, his acts in paying the rates fixed by law upon such valuations are admissions of value, and the plaintiff would be estopped from setting up different and higher valuations and the exclusion of the offered testimony was error. Plaintiff contends in his brief that there was no evidence introduced tending to show C. C. Cline was plaintiff's agent or had authority to sign the "contract of live stock shipment." But as plaintiff's own evidence discloses he (plaintiff) was present when Cline loaded and shipped the live stock; that Cline was in charge of the cattle; that plaintiff paid the freight on the cattle as shipped by Cline, and in the absence of any suggestion in the testimony of plaintiff that Cline was not the "shipper's agent," and in view of the fact that plaintiff had been shipping cattle for eight years and must have therefore known it was necessary for some person to sign the bill of lading or "shipper's contract," and in view of the further fact that Cline, when called as a witness for plaintiff, identified the signature "C. C. Cline—shipper's agent" as his own, the contention of the plaintiff is without foundation, and the evidence introduced was sufficient to establish agency.

"The apparent authority of an agent is to be gathered from all the facts and circumstances in evidence." Minn. Threshing Mach. Co. v. Humphrey, 27 Okla. 694, 117 Pac. 203; Port Huron Engine Co. v. Ball, 30 Okla. 11, 118 Pac. 393; Allen v. Kenyon, 30 Okla. 536, 119 Pac. 960; Midland Savings & Loan Co. v. Sutton, 30 Okla. 448, 120 Pac. 1007; Wrought Iron Range Co. v. Leach, 32 Okla. 706, 123 Pac. 419; Horton v. Early, 39 Okla. 99, 134 Pac. 436; Reeves & Co. v. Phillips, 53 Okla. 375, 156 Pac. 1179; St. Louis Cordage Mills Co. v. Western Supply Co., 54 Okla. 757, 154 Pac. 646.

"A principal is bound by the apparent, as well as the actual or express authority given his agent, where third persons have in good faith acted and relied thereon." Muskogee Refining Co. v. Waters-Pierce Oil Co., 89 Okla. 279, 215 Pac. 766; National Surety Co. v. Miozrany, 53 Okla. 322, 156 Pac. 651; Southwestern Surety Ins. Co. v. Marlow, 78 Okla. 313, 190 Pac. 672.

The natural and logical, and the only inference to be drawn from the acts of the plaintiff in fixing the valuations in the contract and paying the rates predicated upon such valuations, is that plaintiff desired to ship as cheaply as possible, speculating on

the improbability of loss, and was willing to "take a chance" for the purpose of obtaining the cheap rate, and while no case decided by this court has been called to our attention by brief of plaintiff or defendant wherein the phraseology of the contract entered into between shipper and carrier was identical with the one now being considered, the identical question has been determined by courts of other states and by the Supreme Court of the United States, and a fixed and definite rule should be laid down for the guidance of shippers of live stock under such contracts. In Kennedy et al. v. Atchison, T. & S. F. Ry. Co. (Kan.) 179 Pac. 314, the shipping contract was signed by H. G. Ferry, acting for the owner, and by the company's agent, and recited "that the rates on live stock varied according to value" and to enable the company to apply the lawful rate, the shipper declared the horses to be worth $150 each. The horses, three in number, were injured and rendered worthless through the negligence of the carrier, and the shipper brought his action to recover damages in the sum of $4,944.94, and upon appeal the Supreme Court of Kansas, in reversing the court below with directions to deduct from the judgment all that was allowed in excess of $450, quotes from 10 C. J. 399, as follows:

"If parties have agreed on a valuation, as, for instance, where the shipper in compliance with a regulation requiring the value to be stated as a basis for establishing the compensation to be paid, has placed a valuation on goods, such valuation will control, in an action against a carrier for loss."

The court further says:

"That reasoning as adopted in the Foley Case (Express Co. v. Foley, 46 Kan. 457, 26 Pac. 665, 12 L. R. A. 799, 26 Am. St. Rep. 107), is based on the proposition that one who has obtained a more favorable rate by reason of the valuation placed on his property in the shipping contract is precluded from asserting that it is worth more than the amount named for the purpose of increasing his recovery in case of a loss. The reasoning in the federal case (Hart v. Penna. R. Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717) which is followed in Foley Case, applies with practically the same force, whether or not there is an express contract as to the amount of recovery. The risk of loss or injury is an obvious element in determining the charge, and if the shipper is allowed to demand compensation in a larger amount, he recovers something beyond what he has paid for."

In Hart v. Penna. Ry. Co., supra, the value of certain race horses was placed at $200 each, or a total of $1,200. Plaintiff at the trial offered to show damages based on a value amounting to $25,000, and the Supreme Court of the United States, speaking through Mr. Justice Blatchford, after employing the language adopted by the Kansas court in the Foley Case, supra, after holding the exclusion of such evidence proper, said:

"It must be presumed, from the terms of the bill of lading and without any evidence on the subject and especially in the absence of any evidence to the contrary, that, as the rate of freight expressed is stated to be on the condition that the defendant assumes a liability to the extent of the agreed valuation named, the rate of freight is graduated by the valuation."

In American Express Co. v. United States Horse Shoe Co., 244 U. S. 58, 61 L. Ed. 990, the live stock contract contained a declared value as follows: "For horses $100, for colts $50," and the court said:

"Putting out of view the conflicting tendencies of the proof, and looking at the subject-matter from the point of view of the contract, that it was one intended to limit liability, or, in other words, to fix a rate according to value, at the shipper's election, and to regulate recovery of loss correspondingly, would seem too clear for anything but statement, *** as from what we have said it follows that the shipper should not have been permitted, after obtaining the lowest possible rate based upon a valuation to which his right of recovery in case of loss was limited, to recover, upon the happening of the loss, an amount wholly disproportionate and inconsistent with the rate paid, contrary to the express terms of the contract. It results that the judgment below must be and is reversed and the case remanded for further proceedings not inconsistent with this opinion."

The rule thus announced has been followed in cases so numerous that a full citation thereof would serve no good purpose, and attention is therefore directed only to the following: Normile v. Oregon R. & Nav. Co. (Ore.) 69 Pac. 928; Perrin et al. v. U. S. Express Co. (N. J.) 74 Atl. 462, 28 L. R. A. 645; Squire v. N. Y. C. R. R. Co., 98 Mass. 239, 245; Metz v. Ry. Co., 90 Kan. 460, 135 Pac. 667; R. R. Co. v. Lockwood, 17 Wall. (U. S.) 357; R. R. Co. v. Fraloff, 100 U. S. 24; Muser v. Hollads, 17 Blatchf. 412; Dunlap v. Steamboat Co., 98 Mass. 371; Graves v. R. R. Co. 16 Am. and Eng. R. R. Case.. 108; Batson v. Donoran, 4 B. and Ald., 21; Little v. R. R. Co., 66 Mo. 239; Exp. Co. v. Everett, 37 Ga. 688; Am. Express Co. v. Perkins, 42 Ill. 458; R. R. Co. v. Henlein, 52 Ala. 606; Reif v. Rapp, 3 W. and S. 21; Elkins v. Transp. Co., 81 Pa. St. 315; Harvey v. Ry. Co., 74 Mo. 538.

M., K. & T. R. Co. v. Harriman Bros., 23

Sup. Ct. Rep. (U. S.) 396, involved some questions identical with those being considered. In the Harriman Case the "shipper's contract" was admitted in evidence, but the Interstate Commerce Commission tariff No. "A" was by the trial court excluded. Mr. Justice Lurton, speaking for the court, speaking of the I. C. C. tariff No. "A," said:

"That the shipper had the choice of two rates, one 20 per cent. higher than the other, upon this shipment, is shown by the shipping contract and the tariff sheets referred to therein. That the difference between the two rates was not unreasonable.  * * *  The ground upon which the shipper is limited to the valuation declared is that of estoppel, and presupposes the valuation to be one made for the purpose of applying the lower of the two rates based upon the value of the cattle."

Continuing, that court said:

"In the case at bar, it has been said that the shipper was not asked to state the value, but only signed the contract handed to him, and made no declaration, but the same point was made in the Hart Case (supra) when the court said: 'A distinction is sought to be drawn between a case where a shipper, on requirement, states the value of the property, and the rate of freight is fixed accordingly, and the present case. It is said that, while in the former case the shipper may be confined to the value he has so fixed, in the event of a loss by negligence, the same rule does not apply to a case where the valuation inserted in the contract is not a valuation previously named by the shipper. But we see no sound reason for this distinction. The valuation named was the "agreed valuation", the one where the minds of the parties met, however it came to be fixed, and the rate of freight was based on that valuation, and was fixed on condition that such was the valuation, and that the liability should go to that extent and no further.' "

"That the value of the cattle shipped under this valuation did greatly exceed the valuation therein represented may be true. It only serves to show that the shipper obtained a lower rate than he was lawfully entitled to have by a misrepresentation. It is neither just nor equitable that he shall benefit by the lower rate, and then recover for a value he said did not exist, in order to obtain that rate.

"Having obtained a rate based on a declared value, he is concluded, and there is no room for parol evidence to show otherwise. Kansas City S. R. Co. v. Carl, 227 U. S. 639, 57 L. Ed. 33 Sup. Ct. Rep 391 : Hart v. Penna. R. Co., 112 U. S. 331, 5 Sup. Ct. Rep. 151."

We quote extensively from the Harriman Case for the reason the facts appear to be running parallel. In the case at bar the shipper's contract sought to be introduced by defendant, and excluded by the court, contained the clause "(Note: If the value is higher than as printed below, erase and insert proper value.)"

This was immediately followed by the printed schedules of value, among which we find "each calf, $20." The order of the Corporation Commission offered in evidence set a rate of 17 cts. per hundredweight for cattle in "condition for slaughter," and fixed different rates for cattle above such value for show purposes. Defendant sought to prove the rate actually paid by plaintiff, but this offered evidence was also excluded. The reason for the rule adopted in the cases cited appears so sound and so fully meets the ends of justice and the requirements of equity as to require no elaboration, and we are constrained to hold the exclusion of the evidence of the shipper's contract, the tariff schedule or order of the Corporation Commission, and the proffer of evidence of the rate actually paid was error, and having so held, it follows that the instruction asked by the defendant, and refused by the court, "that if you find and believe from the evidence that the plaintiff was entitled to recover he cannot recover more than $20 damages in this case," was error on the part of the trial court, for which error this cause should be reversed.

Defendant further objects to the nature and form of the evidence of value admitted by the court, but having determined the value fixed by the shipper in his written contract, made for the purpose of obtaining the low freight rate, fixes the limitation of his recovery, a discussion of this evidence would be an idle pursuit.

For the errors indicated, the judgment should be reversed and the cause remanded, with instructions to grant the defendant a new trial in conformity with this opinion.

By the Court: It is so ordered.