## ENID OIL & PIPE LINE CO. et al. v. CHAMPLIN.

No. 14312—Opinion Filed Sept. 22, 1925.

Rehearing Denied Oct. 20, 1925.

(Syllabus.)

1. **Appeal and Error—Questions of Fact—Conclusiveness of Findings.**

Where, in a law action tried to the court, jury being expressly waived, there is sufficient competent evidence reasonably tending to support the findings and judgment of the trial court, the same will not be disturbed on appeal.

2. **Carriers—Limitation of Liability—Consideration for Contract.**

A common carrier is bound under the contract of carriage to deliver that which it undertakes to transport without negligent loss or damage thereto, and cannot limit its liability by contract, in the absence of some specific consideration to the shipper for such agreement.

3. **Same—Carriage of Crude Oil—Delivery —Allowance for Shrinkage.**

A custom incident to the shipping and transporting of crude oil providing for strapping the tanks in the field three per cent, short to allow for shrinkage, evaporation, and losses due to the volatile nature of the product which was known to and recognized by both the shipper and carrier and made a part of the contract of carriage, will not be construed so as to permit a deduction of three per cent. from the amount of oil received for transportation irrespective of whether the actual loss from the excepted cause amounted to that much or not. A carrier will be required to account to the shipper for all oil received for transportation, less only that loss due to the excepted causes without negligence, such deduction not exceeding, however, three per cent. of the total.

4. **Parties—Unnecessary Parties Defendant—Lack of Controversy with Plaintiff.**

A third party cannot be brought into an action as defendant on motion of the main defendant where the issues in the original suit are foreign to any issues between him and his codefendant, and the court cannot, over his objection require him to litigate a controversy between himself and codefendant, which controversy is not germane to the issues in the original action.

5. **Pleading — "Cross-Petition" Against Third Party by Defendant Unauthorized.**

Our Code, sections 268, 270, and 273, C. O. S. 1921, provides what the pleadings on the part of the defendant shall be and what the answer shall contain and how a counterclaim may be pleaded, but does not authorize a "cross-petition" such as was filed in the instant case.

6. **Parties—Erroneous Bringing in of New Party with no Interest Adverse to Plaintiff.**

Before additional parties may be brought in, under sections 219 and 224, C. O. S. 1921, it must clearly appear that they have or claim some interest in the controversy adverse to the plaintiff or are essential to a complete determination or settlement of the questions involved, and in the absence of such showing, it is error to require such additional parties to come in.

Error from District Court, Garfield County; J. C. Robberts, Judge.

Action by H. H. Champlin against the Enid Oil & Pipe Line et al. Judgment for plaintiff, and defendants bring error. Reversed and remanded as to the defendant

Oil State Refining Company, and affirmed as against the Enid Oil & Pipe Line Company.

Curran & Kruse, for plaintiff in error Enid Oil & Pipe Line Company.

Simons, McKnight & Simons, for plaintiff in error Oil State Refining Company.

McKeever, Moore & Elam, and Harry O. Glasser, for defendant in error.

HUNT, J. This action was commenced in the district court of Garfield county by H. H. Champlin, as plaintiff, against Enid Oil & Pipe Line Company, a corporation, as defendant, in July, 1919. An amended petition was thereafter filed, and on motion of the defendant, the Oil State Refining Company, a corporation, was made defendant, and the defendant Enid Oil & Pipe Line Company filed its answer to the amended petition of plaintiff denying any liability to it, and also filed its cross-petition against its codefendant, Oil State Refining Company, setting out that if, as alleged in plaintiff's amended petition, the Oil State Refining Company received oil which was being transported through its lines to plaintiff, then the Oil State Refining Company is liable for the value of the oil so received, and if plaintiff should recover any judgment against the defendant Enid Oil & Pipe Line Company, it was entitled to judgment over and against its codefendant, the Oil State Refining Company. The defendant Oil State Refining Company objected to being made a party defendant, contending that this was a suit against the Enid Oil & Pipe Line Company as a common carrier on its contract of carriage and that it was neither a necessary nor proper party. The trial court overruled this contention and made it a party defendant and required it to answer, to all of which defendant Oil State Refining Company duly excepted. A trial was had to the court without a jury, the same being waived, and judgment rendered for the plaintiff, Champlin, against the defendant Enid Oil & Pipe Line Company for $26,741.67, and for the defendant Enid Oil & Pipe Line Company against its codefendant, Oil State Refining Company, for the same amount. Separate motions for new trial were filed in due time by each defendant and same overruled and judgment was entered in accordance with the findings of the court as above stated, and from this judgment, this appeal is taken. Each defendant filed separate petitions in error in this court and same will therefore be considered separately.

The Enid Oil & Pipe Line Company being principal defendant, we will first consider its assignments of error to the effect that the judgment of the court is not supported by sufficient evidence, and is contrary to both the law and the evidence. The undisputed facts in this case are that the plaintiff, Champlin, was the owner of some producing oil leases in the Garber field and was also purchasing oil in this field and was operating a refinery in the city of Enid, some 18 miles away. That the defendant Enid Oil & Pipe Line Company owned and operated a pipe line from the Garber field to the city of Enid and that plaintiff entered into a contract with it as a common carrier to transport his oil from the field to his refinery. Subsequently, the defendant Oil State Refining Company completed a refinery in the city of Enid adjacent to and near the refinery of plaintiff and began purchasing oil from the Garber field and arranged with the defendant Enid Oil & Pipe Line Company to transport its oil from the Garber field to its refinery. Plaintiff's contention is clearly set out in his amended petition, and omitting the caption, same is as follows:

"Comes now the plaintiff and for cause of action in his amended petition states:

"That the defendant is a corporation existing under and by virtue of the laws of the state of Oklahoma, with its principal place of business at Enid, where it is engaged in conducting a pipe line as a common carrier, transporting crude petroleum from the oil fields in Garfield county to the refineries and was so engaged at all times herein specified and mentioned.

"That the plaintiff is engaged in conducting an oil refinery at the city of Enid and at all times herein mentioned, employed the defendant company to transport for his refinery, the crude oil produced and purchased by him in the oil field to his said refinery and that as such common carrier, the defendant company received said crude oil and transported the same for hire from September the first, 1918, to and including the month of May, 1919.

"That by reason of a leakage in the valve or gate which closes the oil out from the line and tanks of the Oil State Refining Company tanks, to which refinery said defendant also delivered crude oil through its pipe line during the times herein mentioned, and while the defendant company was pumping and delivering crude oil to the refinery of this plaintiff, he sustained a continuous loss and damage, his oil leaking through the defective gate and valve which the defendant negligently maintained into the receiving tanks of the said Oil State Refining Company.

"Plaintiff states further that said defendant carelessly and negligently permitted

said gate or valve to remain in a defective condition from the month of September, 1918, to the month of May, 1919, inclusive; by reason of which carelessness and negligence on the part of the defendant, the plaintiff lost in the month of September, 1918, 1,254.79 barrels of crude oil; in the month of October, 1918, 218.91 barrels; in the month of November, 1918, 2,750.03 barrels; in the month of December, 1918, 139.28 barrels; in the month of January, 1919, 471.75 barrels; in the month of February, 1919, 1,776.10 barrels; in the month of March, 1919, 1,584.15 barrels; in the month of April, 1919, 2,484.28 barrels, and in the month of May, 1919, 1,735.03 barrels, all of which was and is of the value of $4.10 per barrel, and by reason of which loss occasioned by the carelessness and negligence of the defendant, the plaintiff has been damaged in the total sum of $51,549.75, for which demand has been duly made upon the defendant and which it has and does refuse to pay and for which amount the plaintiff, together with his costs, should recover judgment, less unpaid transportation charges due defendant, of $10,684.69.

"Wherefore, plaintiff prays judgment against the defendant in the sum of $40,900.86, and for costs of suit."

The transportation charges referred to were paid before trial and were therefore eliminated from the case.

It will thus be seen that plaintiff, while alleging that the defendant Oil State Refining Company, in fact, got a large portion of his oil, seeks no judgment against it, but relies solely on his contract of carriage with the defendant pipe line company and seeks judgment against it for failure to deliver to his refinery the actual number of barrels of his oil received in the field less only such loss in transit as is due to the nature of the product without negligence on the part of the carrier.

Plaintiff admits that defendant is entitled to credit for such oil as was actually lost in transit due to the nature of the product itself, without any negligence on the part of defendant carrier.

Defendant Enid Oil & Pipe Line Company in its answer admits the contract of carriage with plaintiff, but denies that plaintiff lost any oil, and alleges the fact to be that according to the system used in gauging the oil both at the field and refinery which was inaugurated by plaintiff more oil was receipted for by plaintiff at his refinery in Enid than the defendant pipe line company receipted for in the field.

Defendant further alleges that the contract of carriage was oral, which is admitted, and that under this oral agreement it was only required to account to plaintiff at the refinery for 97 per cent. of the oil received at the field, three per cent. being allowed as a deduction for natural losses occurring in the transportation of the oil caused by evaporation, shrinkage, etc.

The first question to be determined is whether or not there was in fact a loss of oil in the transportation thereof from the field to the refinery at Enid. If so, was such loss due to the negligence of defendant Enid Oil & Pipe Line Company in the operation of its pipe line, either by the use of defective equipment or from other causes? In our opinion, from a careful examination of the entire record, we think there is ample evidence to support the finding of the trial court that the plaintiff in fact lost a large amount of oil, to wit, 12,574.11 barrels. The question then presents itself, Is the defendant pipe line company liable to the plaintiff for this loss on its contract of carriage? As heretofore stated, the defendant's contention is that there was in fact no loss; that it was required under its verbal contract to account to the plaintiff at the refinery for only 97 per cent. of the oil received at the tanks in the field as shown by its receipts; the tanks being strapped three per cent. short, as was the prevailing custom; and that it not only accounted for the oil receipted for, but in fact some 1,600 barrels in excess thereof during the entire period involved in this lawsuit. Plaintiff admits the tanks were strapped three per cent. short and that the same was the prevailing custom, but contended this arrangement did not give defendant the right to appropriate any of the oil to its own use or divert it to some other refinery; that defendant, being a common carrier engaged in transporting oil, could not and did not acquire any title to any part of said oil, but was required to account to plaintiff for every barrel received less the actual loss occurring by reason of the nature of the product without any negligence on the part of the carrier; that this three per cent. was the maximum deduction allowed for shrinkage, evaporation, etc., but was to be deducted only in event the usual and natural loss from such causes actually amounted to that much. We think this contention sound both in reason and law. We cannot conceive that it was within the contemplation of the parties at the time the contract of carriage was entered into that in addition to the carrying charge the defendant was to acquire any of the oil by reason of the actual loss, for which allowance was made, being less than the

three per cent. fixed as a maximum allowance, or was to be exempt from liability for any oil negligently lost.

As counsel very properly suggested, oil is a peculiar thing; it expands, it contracts, it evaporates, and being a more or less uncertain element, loss will naturally occur in transportation which it is difficult and at times impossible to account for, and therefore, taking all these things into consideration, the probable natural loss from these various causes was fixed at three per cent., but we do not believe that it was intended, or that the existing custom with reference to strapping the tanks three per cent. short contemplated, that the entire three per cent. should be deducted regardless of whether the actual loss amounted to that or not. We think a proper, fair, and just interpretation of this part of the contract would be that only the actual loss was to be deducted, and are further of the opinion from all the facts and circumstances surrounding this transaction and. from the very nature of the business of producing, transporting, and refining oil, with which all the parties involved in this transaction were thoroughly familiar, that such was the intention of the parties at the time this contract of carriage was entered into.

The court found in its finding of fact that there was a total shortage for the nine months of 12,574.11 barrels. The court further found the total amount of crude oil delivered by the Champlin Company to the Pipe Line Company in the field for transportation measured in volume 100 per cent. from September, 1918, to May, 1919, was 375,215.12 barrels. The plaintiff admits that the natural loss in transporting this oil from the field to the refinery would probably amount to one-half of one per cent., but contended that in no event should it exceed one per cent. There was some evidence introduced on this point, and the court found that the natural loss would amount to one and one-half per cent., or 5,628.22 barrels, which deducted from the actual loss, leaves a total net loss of 6,945.89 barrels. Considering the fact that the distance from the field to the refinery was only about 18 miles, we think the court's allowance of one and one-half per cent. for natural loss in transportation was fair and reasonable and the same is amply supported by the evidence.

We quote from plaintiff in error's brief:

"We admit that the plaintiff was the owner of the 3 per cent. of the oil or as much of the same as could be saved and delivered to him, but if the defendant was **unable** to deliver it to the plaintiff, then the defendant was not liable for the same under their agreement as a common carrier."

This statement is all right except in so far as it undertakes to exempt the defendant from liability for oil it was unable to deliver from any cause. It is well settled that a common carrier cannot by contract limit its liability for delivery only of a portion of the thing it undertakes to transport. The only cases with which we are familiar wherein a limitation of liability on the part of the carrier has been upheld in this state are cases wherein a certain value was declared by the shipper and a special freight rate fixed thereon. In other words, the shipper received the benefit of a lesser freight rate by fixing a certain value and the carrier's liability for loss or damage to the thing shipped was limited to the value so fixed by the shipper. Schaff, Receiver, v. Kramer, 109 Okla. 109, 235 Pac. 517, and cases therein cited. This principle is not involved, however, in the case at bar. The carrier in the instant case, receiving the regular rate for transporting oil from the Garber field to Enid, therefore could not limit its liability or contract so as to reserve to itself a portion of that which it was undertaking to transport. We know of no custom pertaining to the oil industry, and certainly none was proven, whereby the defendant would be entitled to reserve to itself three per cent. of the oil it had agreed to transport. The contract was fair and made ample allowance for loss due to the nature of the product, etc. If such loss had amounted to as much as three per cent., defendant would not have to account for oil so lost, but the court found the actual loss from said causes amounted to only or and one-half per cent. and after allowing credit for same there was still a shortage of several thousand barrels of oil, for which plaintiff is certainly entitled to be reimbursed.

We are well aware that the defendant Enid Oil & Pipe Line Company makes no claim of title to any part of the oil delivered by plaintiff Champlin to it for transportation, but relies upon the agreement and custom relative to strapping the tanks three per cent. short as being sufficient to exempt it from liability for any loss up to three per cent. no matter from what cause it occurs. As above stated, we do not think, under the terms of the contract itself, or the custom as to strapping the tanks three per cent. short, which plaintiff Champlin recognized at all times, that this position is tenable, but that both parties

merely recognized, as do those engaged in the production, refining, and transporting of crude oil generally, that, due to the volatile nature of the product, there might be a loss in transportation up to three per cent., but this custom would not authorize or permit the carrier to deduct that amount from the total amount of oil received for transportation if the loss from such excepted causes amounts to less than three per cent., or, as found by the court in this case, to only one and one-half per cent.

The determination of this phase of the case rests almost solely upon the construction of the contract of carriage between plaintiff, Champlin, and defendant, Enid Oil & Pipe Line Company, for, as suggested by plaintiff in error Enid Oil & Pipe Line Company, in its brief, the contract is the predominant question in the case, and to arrive at a proper construction of same does not require an exhaustive review of authorities, but merely an understanding of the elementary principles applicable to the construction of contracts, which we have attempted to follow in determining this matter, giving full force to every provision of the contract, in the light of all the facts and circumstances surrounding its execution as shown by the record and the clear intention of the parties, and keeping in mind the principles of law as hereinbefore announced, that the carrier cannot by contract limit its liability for delivery only of a portion of that which it undertook to transport. A determination, however, of the next question, that of the liability of the Oil State Refining Company, calls first for a review of the authorities on the question as to whether or not the Oil State Refining Company was a proper or necessary party to this action, and we will therefore next consider the action of the court in making the Oil State Refining Company a party defendant on motion of the defendant Enid Oil & Pipe Line Company, and rendering judgment against it in favor of its codefendant for the same amount awarded plaintiff.

If the trial court erred in making the Oil State Refining Company defendant on motion of the defendant Enid Oil & Pipe Line Company, then it necessarily follows that the judgment rendered against it must be reversed. We will, therefore, first consider assignments of error on this question. The defendant Oil State Refining Company objected at every stage of the proceedings to being brought in as a defendant, against its wishes, and on the motion only of the main defendant in the action, and properly

saved its exceptions to the court's rulings on this point.

The only statutory authority relied on by defendant Enid Oil & Pipe Line Company for making the Oil State Refining Company a party is section 219, C. O. S. 1921, which is as follows:

"Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the questions involved therein."

And section 224, C. O. S. 1921, which is as follows:

"The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in."

Also, section 318, C. O. S. 1921, which is as follows:

"The court may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding by adding or striking out the name of any party, or correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or conform the pleading or proceeding to the facts proved, when such amendment does not change substantially the claim or defense; and when any proceeding fails to conform in any respect, to the provisions of this Code, the court may permit the same to be made conformable thereto by amendment."

The first thing to be determined in considering this question is whether or not the defendant Oil State Refining Company had or claimed any interest in the controversy or was a necessary party to the complete determination or settlement of the questions involved therein, and whether its presence in the case as defendant was necessary for a complete determination of the controversy.

This was a law action against the defendant Enid Oil & Pipe Line Company on its contract of carriage for its failure to deliver, as plaintiff alleged, all the oil it had undertaken to transport for plaintiff. While it is true that the plaintiff alleged in his amended petition that the oil lost had been diverted into the tanks of the Oil State Refining Company, yet the plaintiff sought no judgment against it, neither did he join in the request to make it a party. The plaintiff made it plain at all times that he re-

lied on his contract of carriage with the defendant Enid Oil & Pipe Line Company, and it was therefore only necessary for him to show delivery of oil to the carrier, and the failure of the carrier to deliver the amount of oil it had received to destination, less, of course, the amount lost by leakage, evaporation, etc., due to the nature of the product, for which allowance was to be made. It was not incumbent upon the plaintiff in his suit against the carrier to show what had become of the lost oil, but it was sufficient to show that it had not been delivered to him, in accordance with the contract of carriage. Upon this showing being made to the satisfaction of the court, the liability of the carrier was established without regard to whether the oil was delivered to the Oil State Refining Company, converted by the carrier itself, or lost through some other cause. The gist of the plaintiff's action against the Pipe Line Company was the negligent loss of the oil, and not that the same had been received and converted by the Oil State Refining Company. Of course, under the issue as framed, with the Oil State Refining Company as defendant under order of court, testimony was offered to the effect as alleged in plaintiff's petition:

"That plaintiff's oil leaked through defective gates and valves negligently maintained by the defendant Enid Oil & Pipe Line Company into tanks of the Oil State Refining Company."

And the court found:

"That the defendant Oil State Refining Company received a **large portion** of the oil lost by the plaintiff."

We might digress here long enough to say that the court, after so finding as above set out, that the defendant Oil State Refining Company received "a large portion" of the oil lost by plaintiff, then rendered judgment against this defendant for all the oil lost by the plaintiff. The judgment then against this defendant is inconsistent with the findings of the court, but this finding, when considered in connection with the judgment against the Enid Oil & Pipe Line Company, illustrates that the court was of the opinion that it was not incumbent upon the plaintiff to show what had become of the lost oil, but merely that the carrier had failed to deliver it as under its contract of carriage it was obliged to do, and it therefore breached its contract and was liable in damages for so doing. The defendant Oil State Refining Company, if not a party to the suit, could not in any way be affected by this judgment, and the amount thereof

would not be conclusive against it in a suit by the Pipe Line Company for the oil it had erroneously or negligently delivered to it. In other words, in a suit by plaintiff against the pipe line company, as above stated, plaintiff was only required to show that the Pipe Line Company had negligently lost a portion of his oil, and in a suit against the Oil State Refining Company by the Pipe Line Company, the Pipe Line Company would have to show that the Oil State Refining Company had received from it a certain amount of oil to which it was not entitled and had converted same to its own use, which might be all the oil that the plaintiff, Champlin, lost, or it might be, as the court found, only a "large portion" of it.

Plaintiff in this case elected to sue only the Pipe Line Company, disregarding any cause of action he might have had against the Oil State Refining Company for the conversion of his oil, and it is apparent from the record that the defendant Oil State Refining Company had and claimed no interest in the controversy between plaintiff and defendant adverse to plaintiff, and it was not and could not be a necessary party to a complete determination or settlement of any questions involved therein.

Plaintiff might establish a liability against defendant on its contract of carriage without in any way affecting defendant Oil State Refining Company, and if after establishing such liability there were a controversy between defendant Pipe Line Company and defendant Oil State Refining Company, it would be a controversy in which the plaintiff was not interested, presenting questions which would be no defense against the plaintiff, Champlin. The Oil State Refining Company would not be required to say that the plaintiff lost no oil, but only, if he did lose any, that it received no part of the same. We think the test is whether or not a complete disposition of plaintiff's cause of action may be had without considering the subject-matter of the cross-petition, as was held in a very able opinion by Chief Justice Hayes in Tracey v. Crepin, 40 Okla. 297, 138 Pac. 142. Applying the facts in the instant case to the reasoning followed therein, it follows that the conversion of the oil by the Oil State Refining Company constituted no defense to plaintiff's cause of action against the Pipe Line Company. It arises wholly upon a separate and independent contract, to wit, a contract of carriage. The subject-matter of plaintiff's petition is the determination of the existence of the contract, the

breach thereaof, and the amount of damages sustained thereby.

It was held in Reed v. Wing (Cal.) 144 Pac. 964:

"Persons who will not be affected or be concluded by a decree are not necessary parties, though having an interest in the subject-matter of the litigation."

It is true, as suggested by defendant Pipe Line Company in its brief, the facts in this case are in no way similar to the facts in the instant case, but the question of necessary or proper parties is involved, and we think the principle of law announced and above set out applicable here. In the instant case, the defendant Pipe Line Company denied all the allegations of plaintiff's petition, and if its answer was true, it was entitled to judgment against the plaintiff on the merits. Thus it was not necessary to bring in the defendant Oil State Refining Company in order to secure a final determination of the controversy between the plaintiff and defendant. See Alcox v. Hoyt (Minn.) 92 N. W. 464.

In Banker's National Bank v. Security Trust Co. (S. D.) 103 N. W. 654, it was said:

"A defendant to an action cannot insist that a new party defendant be brought in to settle a controversy purely among the defendants which does not affect the plaintiff." Citing Carrol v. Fethers, 82 Wis. 67, 51 N. W. 1128.

If plaintiff, Champlin, obtained judgment against defendant Pipe Line Company, he would be in no way affected by or interested in the controversy between the Pipe Line Company and the Oil State Refining Company as to whether the Oil State Refining Company should be required to reimburse the Pipe Line Company for the amount it had been required to pay.

Cooper v. German National Bank, 47 Pac. 1041, a Colorado case, was a suit wherein the main defendant, by filing what he termed a second defense and cross-complaint against a person not a party to the action, attempted to have this third party brought in as defendant, just as in this case the main defendant, Enid Oil & Pipe Line Company, had the Oil State Refining Company made a party defendant and filed its answer and cross-petition, the answer denying liability to plaintiff and the cross-petition setting up a claim, not against plaintiff or any defense to plaintiff's cause of action, but against the Oil State Refining Company.

Sections 268 and 270, C. O. S. 1921, provide that the pleadings on the part of defendant shall be a demurrer to the petition, demurrer to the reply, or answer to the petition.

Section 273, C. O. S. 1921, states what the answer shall contain, and provides:

"* * * Second: A statement of any new matter constituting a defense, counterclaim, or set-off, or a right to relief concerning the subject of the action in ordinary and concise language, and without repetition. * * *"

Section 274, C. O. S. 1921, relating to counterclaims, provides:

"The counterclaim mentioned in the last section must be one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and arising out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim, or connected with the subject of the action. * * *"

It will thus be seen that the paper filed was neither a defense to an action nor counterclaim, nor did it in any manner come within any of the statutory provisions.

Section 263, C. O. S. 1921, provides:

"The rules of pleading heretofore existing in civil actions are abolished; and hereafter, the forms of pleadings in civil actions in courts of record, and the rules by which their sufficiency may be determined, are those prescribed by this Code."

We have been unable to find any statutory authority for such a pleading as was filed herein, nor has any been called to our attention in the able and exhaustive briefs filed by counsel. A cross-petition must in the very nature of things, if allowable, be against the plaintiff. The alleged cross-petition herein was against a third party and in no way opposed the plaintiff's right to recover, and interposed no defense, and hence, as was said in the case of Cooper v. German National Bank, supra, "could not be denominated a cross-petition, and it certainly was neither a defense nor counterclaim". See also, Heaton v. Lynch (Ind.) 38 N. E. 224.

In Patterson v. Central State Bank et al., 75 Okla. 147, 182 Pac. 678, wherein the plaintiff, the Second National Bank of New Hampton, Iowa, sued J. E. Patterson, the court on motion of defendant Patterson made the Alva Security State Bank and the Central State Bank of Alva parties defendant, and defendant Patterson filed answer to the original petition and cross-petition against his codefendants. In affirming the action of the trial court in dismissing the cross-petition against the defendant banks this court said:

"The allegations in the cross-petition of Patterson, if taken as true, were not a defense to the action brought by the Second National Bank of New Hampton, Iowa; nor was the same germane to the issues raised, but was a controversy solely between Patterson and the Central State Bank of Alva, and the Alva Security Bank. Plaintiff in error makes the contention that the Second National Bank of New Hampton, Iowa, made no objection; but this cannot be the rule that governs. The defendants raised the objection, and in the case of Tracey v. Crepin, supra, a codefendant moved to dismiss the cross-petition for the reason the issues therein were not germane to the issues in the original action, and the court sustained the motion of the codefendant to dismiss.

"The law provides how controversies shall be tried and determined, and a defendant has a right to insist that, if he is to be sued, said suit should be brought in the manner provided by law, and * * * where he has been made a codefendant in an action where the issues in the original suit are foreign to any issue between him and his codefendant, the court cannot, over his objection, require him to litigate a controversy between himself and codefendant which controversy between himself and codefendant is not germane to the issues in the original action."

Such is the situation we have here, and being clearly of the opinion, as heretofore stated herein, that the controversy between the defendant Pipe Line Company and defendant Oil State Refining Company is not germane to the issues in the orignial action, we deem a further review of the authorities unnecessary. It is clear to us from a careful examination and a thorough analysis of our statute above quoted and review of the authorities cited that the Oil State Refining Company was neither a proper nor a necessary party to the action instituted by plaintiff, Champlin, against the defendant Enid Oil & Pipe Line Company.

We are therefore of the opinion that the trial court erred in sustaining the motion of the defendant Pipe Line Company in making the Oil State Refining Company a party defendant, and likewise erred in overruling the motion of the defendant Oil State Refining Company to dismiss as to it. In view of this holding, it becomes unnecessary to consider other assignments of error.

For the reasons stated, the judgment against the Oil State Refining Company is reversed and the cause remanded to the district court of Garfield county, with instructions to dismiss the so-called cross-petition against the defendant Oil State Refining Company. We are further of the opinion, from an examination of the entire record and after considering all of the assignments of error urged by the defendant Pipe Line Company, that there is sufficient competent evidence to support the judgment in favor of the plaintiff, and in view of the well-established rule of this court that where there is sufficient competent evidence reasonably sustaining the findings of the trial court, the same will not be disturbed on appeal, the judgment in favor of the plaintiff, Champlin, and against the Enid Oil & Pipe Line Company is affirmed.

NICHOISON, C. J., BRANSON, V. C. J., HARRISON, MASON, PHELPS, LESTER, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 4 C. J. p. 879, § 2853. (2) 10 C. J. p. 151 § 190; anno. 44 L. R. A. pp. 295, 451; 4 R. C. L. p. 782. (3) 10 C. J. p. 189 § 243. (4) 31 Cyc. p. 476 (Anno). (5) 31 Cyc. p. 224. (6) 31 Cyc. p. 474.